**FILED**

OA 91 Criminal Complaint

E-FILING

# United States District Court

OCT X 5 2007

NORTHERN DISTRICT OF CAILFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
DONALD RAY WILLIAMS

CRIMINAL COMPLAINT

Case Number: 5 07 70590

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about July 1, 2007 in Santa Clara County, in the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire, a building used in interstate and foreign commerce

in violation of Title 18 United States Code, Section(s) 844(i).

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

See attached affidavit of Special Agent Gabrielle M. Solleder

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Approved As To Form: Gary G. Fry /s/ Gary M. Fry
AUSA

Gabrielle M. Solleder
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

10/5/07
Date

at San Francisco, California
City and State

Honorable Nandor J. Vadas    United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

DOCUMENT NO. 1
CSA's INITIALS
DISTRICT COURT
CRIMINAL CASE PROCESSING

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Gabrielle M. Solleder, being first duly sworn, depose and say:

## I. Purpose

1. I am submitting this Affidavit in support of a criminal complaint and arrest warrant charging Donald Ray Williams, date of birth ▅▅▅▅, 1962, with a violation of 18 United States Code § 844 (i), maliciously damaging or destroying, by means of fire or an explosive, any building...used in interstate commerce.

## II. Background of Affiant

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice and have been so employed since August 1987. I have completed the following professional training at the Federal Law Enforcement Training Center, Glynco, Georgia: criminal investigators school (eight weeks) and new agent training (eight weeks) at the ATF academy. I have conducted or participated in numerous investigations pertaining to violations of federal arson laws. I have participated in and/or executed several search warrants pertaining to federal and state arson violations. I have been assigned to the ATF San Francisco Field Division Arson and Explosives Group for over two years.

3. The statements contained in this affidavit are based, in part, upon my own personal knowledge, but are also based upon information provided to me by other law enforcement officers. Because this affidavit is for the limited purpose of setting forth probable cause for the requested complaint and arrest warrant, I have not necessarily included every fact known to me through this investigation. I have set forth those facts I deem necessary to establish probable cause to believe that the above-mentioned violation has been committed by Donald Ray Williams.

//
//

### III. Facts Supporting Probable Cause

4.  On July 2, 2007, I responded to 310 University Avenue, Palo Alto, to assist in the investigation of a commercial fire. I assisted in conducting interviews, collecting evidence and developing a possible suspect. The ATF National Response Team (NRT) was called in to assist with the origin and cause of the fire. NRT investigators determined that the fire was arson. I worked closely with Palo Alto Police Department (PAPD) Detective Adrienne Moore who prepared a Report (#07-4212) of our investigation. I reviewed Det. Moore's report, a large portion of which is set forth below:

> On July 2, 2004, PAPD Lt. Denson reported that data captured on a video camera located on a building located to the immediate south of 310 University, led him to believe that the fire had a suspicious origin. On the same date, investigators viewed the video. In summary, a dark colored compact pulled into Lane 21 at approximately 2131 hrs, 1 July 2007. (Lane 21 is the alley which runs parallel to University Avenue, one block south of University Avenue. Lane 21 also runs behind 310 University Avenue.) A female was associated with the car. A stooped subject wearing black is seen walking up and down in the alley and from one side of the alley to the other. At approximately 2054 hrs the subject is seen leaving the alley. I believe that this subject was a transient known as Victor Spence. At approximately 2054 hrs two subjects are seen walking e/b on Lane 21, in front of the area of the Citibank. A subject in black appears to be walking in front of a subject in white, and the two subjects do not appear to be together. The subject dressed in white, wearing white shoes crosses over Bryant St., taking a white T-shirt off while he is walking. He is either wearing black clothing on his torso, or he is dark skinned. He is next seen climbing on top of the roof for 300/310 University Ave, no longer holding the shirt he took off. The subject is seen moving in and out of a door located on the south side of the roof. At one point he places something that appears to be black cloth in nature, on the roof. The cloth disappears and then the subject is seen wearing black pants with his white shoes. The subject is seen peering over the side of the roof onto Lane 21 on several occasions between the time period of 2100 and 2105 hrs. This would be the last time the subject is seen. As the video progresses it becomes apparent that a fire has started on the roof, in its north eastern quadrant, as is evidenced by the flames which can be seen in the reflection of the windows located on the west side of the roof. A detailed time line for the video was completed by ATF agents which states:
>
>> -At no time is the subject seen leaving the roof
>> -A subject is seen moving in the hallway on the other side of the windows located on the west side of the roof. It is not known if this is the subject on the roof or a different subject in that the video is not clear enough to make a determination. One can access the hallway through the door located on the roof that the subject is seen to disappear behind on several occasions.
>
> At approximately 1400 hrs, I (Det. Moore) spoke with Officer Scott Savage. Officer Savage spoke to Victor Spence, a downtown transient, who informed him

-2-

of a black man who he has seen scale a pole located on the south side of Walgreens to the roof top for Walgreens, on more than one occasion during the last 2 weeks. He described the black man as 30-40 years old, 6', 170-180, thin and in shape. He stated further that the man had straight shoulder length hair or corn rows, he had seen him with either on separate occasions. Spence reported that he had in the late 1990's-early 2000's watched as the man was arrested by 2 female police officers. [The report documenting this arrest was 99 284 0163] He did not see the man for a long while, and recently, he has begun to see the man again. Spence reported that he sees the man walking on University Ave, walking in and around the alley he sleeps in regularly, climbing to the roof for Walgreens, and walking on the roof for Walgreens, fairly often, especially over the last 2 weeks.

I showed Spence four photographs of people I knew who have frequented the down town area. The photographs were of Donald Ray Williams, Cleveland Kennard, Ralph Jenkins, and Michael Haight. Spence did not recognize anyone except for Donald Williams. Spence told me that if Williams hair was a little more slicked down, and if his upper body was defined and similar to a gymnasts, then he was the man he sees climb up on the roof.

5.   On July 2, 2007, I (Agent Solleder) conducted a search of the dumpsters located in Lane 21. I found a torn white t-shirt which PAPD. Sgt. Sandra Brown placed into evidence. Investigators also placed into evidence a metal pole which runs up the back wall of 310 University Avenue and part of the roof flashing where the subject was seen placing his hands in the surveillance video. Sgt. Brown also took numerous swabs of the remaining roof flashing which could not be removed.

6.   On July 5, 2007, I interviewed a citizen informant (CI) who was parked in the alley just prior to the fire. The CI told me that he/she watched in his/her rear view mirror as a black male walked down the alley and tore off his white undershirt. The male put the shirt in a dumpster and disappeared from the CI's view. He/she did not see the male again.

7.   I reviewed another portion of Det. Moore's Report which is set forth below.

On 5 July 2007, I contacted Parole Agent John Asenso at the office of parole in Redwood City. I told him about the fire I was investigating, and Spence's identification of Williams. I told Asenso that we had no evidence to suggest that Williams was responsible for the fire, but that we wanted to speak to him in that he may be a witness to the fire as a result of his having been seen on the roof where the fire occurred. Asenso reported that he had no problem with my contacting Williams and he told me that he contacts Williams regularly at his address of record. Asenso told me that Williams was recently released from EPS, where he spent 14 days. He was placed at EPS while being housed in the San Jose Main Jail for a parole violation and possession of Marijuana charges. Asenso told me that Williams has mental issues, for which he is being medicated. I asked Asenso when the last time he was at Williams's house was. He stated that it was last Friday, 29 June 2007. He told me that he periodically drops by the

-3-

house to check on Williams and his elderly parents, who want him moved out of the house because of his mental issues. His parents report that Williams is unpredictable and dangerous to live with. Asenso explained that at Williams' parents' request, he had been attempting to locate housing for Williams. He told me that he had been unsuccessful so far.

Asenso had me call his office in order to get Williams address and phone number in East Palo Alto. When I called the office of parole I spoke to Gorden Lee, who provided me with Williams address as 407 Wisteria, East Palo Alto, Ca 94303. The phone was provided as 325-6618.

On July 6, 2007, Agt. Solleder and I met with Williams in the Redwood City office of Parole I informed Williams that he was free to leave at any time and that we wished to speak to him as a witness to an incident which occurred in Palo Alto. Williams told me that he understood, and that he had no problem speaking to Agt. Solleder and me.

I told Williams that I had heard that he sometimes spends time on the roof for Walgreens in downtown Palo Alto. Williams denied the latter, stating that he has never been on the roof of the building or on the roof of any building. I asked Williams if he hangs out in downtown Palo Alto, and he stated that he had been there, but he only walks through, he does not hang out. I asked Williams if he had ever spent time in the alley located to the rear of Walgreens, and he stated that he had not. I asked him if he knew any of the people who hang out in downtown Palo Alto, and he stated that he keeps to himself, and does not know anyone in downtown Palo Alto.

I asked Williams who he lives with, and he said that he has been living with his mother and father for the last 2 weeks.

I asked Williams if he is taking any medication, and he stated that he was supposed to be taking Benadryl and Seraquil. He told me that he did not like the way the medication made him feel, so he did not take it. He said that he was supposed to take it every evening. Williams reported that he does not believe there is anything wrong with him, which would require him to be medicated. I asked Williams if he had ever been diagnosed with a mental illness, and he stated that he had been diagnosed as bi-polar.

I asked Williams if he knew anything about the fire which occurred at Walgreens, at the beginning of the week. Williams quickly answered, "No, I don't know nothing about no fire." I asked him if he had heard about it on the news, and he stated that he may have, but he did not remember. I asked Williams where he was on the evening of the 1st of July, Sunday night. He said that he was not in Palo Alto, he was walking all around and then he went home. I asked him if he was on University Ave, in Palo Alto, on Sunday night. He said the he does not walk on University. He usually takes Hamilton or Embarcadero down into East Palo Alto. I asked Williams why people had told me that he had been on University, behind Walgreens, and on Walgreens' roof on occasion, during the last 2 weeks. He said that he did not know why people said that because he has not been in any of those locations during the last 2 weeks. Williams repeatedly maintained that he was not in the area the night of the fire, and that he did not know anything about it.

On the same date, I spoke with Rosie Williams, Donald Williams' mother. Williams explained that she was concerned because her son is mentally ill, and sometimes he says things that he does not mean to say, or things he should not say to the police. Williams told me that her son is always home by 2130 hrs each evening. She stated that he was probably home at that time on Sunday, 1 July 2007, however, she did not see or hear him come in. She asked her husband if he saw or heard Donald come into the home the evening of 1 July 2007, and her husband could not remember.

I asked Rosie Williams if she has any other sons, and she stated that she has one other named Kenneth. I asked if he was living in the home too, and she stated that he was not currently. I asked if Donald had his own room, and she stated that he did. Rosie Williams reported that she and Kenneth do have items of property in the room that Donald sleeps in. She explained that she has clothes stored in the closet and that she was not sure what was in the room that belonged to Kenneth, but she was sure some of the things in the room were his.

I asked Rosie Williams if she had seen Donald with any accelerant or flammable substances recently. She stated that she had not, and that she did not keep such items around the house. She reported that there were no such items within her house, and she did not know of any that were outside of the house either. She was adamant that there were no accelerants or flammable liquids around her home, and there should not be any.

8.  On July 8, 2007, at approximately 2:45 PM, I (Agent Solleder) participated in a parole search of Donald Ray Williams' room at 407 Wisteria, East Palo Alto. Santa Clara County Fire Department Inv. Dennis Johnsen and ATF accelerant detection canine, Rosie, were present for the search. Rosie alerted to the following items of clothing which were found in Williams' room: a pair of white pants, a park of dark pants, a white shirt, a pair of socks and a pair of white sneakers. Sgt. Sandra Brown and I packaged the items as evidence.

9.  On July 9, 2007, I reviewed ATF Report of Investigation #41 titled "Origin and Cause Report", written by ATF Certified Fire Investigator Phillip W. Fouts. Agent Fouts prepared a 29-page report. His report includes the fact that an "Accelerant Detection Canine" alerted on the top of a HVAC (heating, ventilation and air conditioning) unit. The dog also had multiple alerts in areas of the southeast office on the second floor. The window sills from the windows in the southeast office were removed and placed on the ground outside the building. The dog alerted on the window sills from windows 1 and 2 from the southeast office. Agent Fouts' conclusion states the following:

> This fire is classified as Incendiary. Based on the information available at this time and after conducting a systematic fire scene investigation, inspecting the physical evidence and considering witness observations, it is the opinion of the

-5-

investigators that the fire was caused by the open flame to available materials inside the middle room of the southeast office. The fire damage here and throughout the structure is consistent with a fire that originated in this room and spread to the void space above the drop ceiling. Investigators sufficiently eliminated all accidental causes in the area.

10. On or about July 11, 2007, I delivered all the evidence recovered in this investigation to the ATF Laboratory. I requested that the ATF Lab attempt to extract DNA from the torn t-shirt, the other clothing and the swabs taken from the roof flashing. ATF Lab officials requested that I obtain a known DNA sample from Donald Ray Williams for comparison.

11. On September 12, 2007, ATF forensic biologist Matthew Farr notified me that he had recovered DNA from the white t-shirt recovered from the dumpster. Farr requested a DNA sample for comparison.

12. On September 17, 2007, United States Magistrate Judge Patricia V. Trumbull signed federal search warrant 07-70548 PVT which authorized federal agents to obtain a DNA sample from Donald Ray Williams.

13. On September 20, 2007, Palo Alto Police Det. Moore and I served federal search warrant 07-70548 PVT on Donald Ray Williams and obtained a sample of his DNA. I booked the sample into evidence and sent it to the ATF Laboratory in Maryland.

14. On September 28, 2007, ATF forensic biologist Farr notified me that the DNA recovered from the t-shirt matched the DNA sample taken from Donald Ray Williams.

15. In the course of this investigation I have talked to Walgreens' corporate headquarters. I know that they are located outside the state of California, in Illinois. I know that Walgreens sells many items manufactured in other states and overseas.

## IV  Conclusion

16. I believe that there is probable cause to believe that Donald Ray Williams caused the fire at 310 University Avenue, Palo Alto. One witness positively identified Williams as climbing up onto the roof of 310 University Avenue on previous occasions. Another witness saw a black male walk down the alley, tear off his shirt, put it in a dumpster and disappear by the dumpsters. Investigators recovered a white t-shirt in a dumpster. Lab personnel recovered DNA from the white t-shirt. Investigators obtained DNA from Williams and lab personnel

1  confirmed that the Williams' DNA matched the DNA recovered from the white t-shirt. This
2  disproves Williams' statement to Detective Moore and me that he was not in the area the night
3  of the fire, nor for the previous two weeks. Surveillance video caught a dark-skinned male on
4  the roof of 310 University Avenue. The male has on light-colored pants and shoes and then is
5  seen wearing dark-colored pants. Investigators conducted a parole search of Williams' room
6  and the ATF accelerant detection canine, Rosie, alerted to white and black pants, a shirt, socks
7  and a pair of white sneakers.

8     17.    Based on the aforementioned facts, I respectfully submit that there is probable
9  cause to believe that Donald Ray Williams committed a crime – specifically, a violation of 18
10 United States Code 844(i), maliciously damaging or destroying, by means of fire or an
11 explosive, any building…used in interstate commerce.

13 I declare, under penalty of perjury, that the foregoing is true and correct to the best of my
14 knowledge and belief.

_____
Gabrielle M. Solleder
Affiant

Subscribed and sworn to before me this 5 day of October, 2007, in San Jose, California.

_____
HONORABLE NANDOR J. VADAS
United States Magistrate Judge